**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| DIXIE ELLISON-ROBBINS, *individually and on behalf of all others similarly situated*, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) No. 4:23-cv-00232-SEP ) |
| BIMBO BAKERIES USA, INC., | ) ) |
| Defendant. | ) ) |

**MEMORANDUM AND ORDER**

Before the Court is Defendant's Motion to Dismiss, Doc. [6]. For the reasons set forth below, the motion is granted.

**FACTS AND BACKGROUND**[1]

Defendant Bimbo Bakeries—under the brand name Entenmann's—sells "All Butter Loaf Cake." Doc. [1] ¶ 1. All Butter Loaf Cake's package looks like this:



*Id*. ¶ 1. Plaintiff Dixie Ellison-Robbins has bought All Butter Loaf Cake a few times since 2021. *Id*. ¶ 49. She alleges that the label is "misleading because the Product includes added artificial flavor which contributes to its butter taste, yet omits this information from the front label." *Id*. ¶ 3. Plaintiff thinks the phrase "All Butter" misleads customers into thinking that the cake does not contain any artificial flavors. *Id*. ¶ 4.

---

[1] The Court assumes that the factual allegations in the Complaint are true. *See Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989).

> All Butter Loaf Cake's ingredients, as disclosed on the back of the package are:
>
> INGREDIENTS:  SUGAR, BLEACHED WHEAT FLOUR, EGGS, **BUTTER**, NONFAT MILK, WATER, FOOD STARCH-MODIFIED (CORN), SOYBEAN OIL, LEAVENING (SODIUM ACID PYROPHOSPHATE, BAKING SODA, MONOCALCIUM PHOSPHATE), GLYCERIN, SALT, SORBITAN MONOSTEARATE, **ARTIFICIAL FLAVORS**, POTASSIUM SORBATE (PRESERVATIVE), POLYSORBATE 60, XANTHAN GUM, MONO- AND DIGLYCERIDES, PHOSPHORIC ACID, CELLULOSE GUM, SOY FLOUR, COCONUT FLOUR.

*Id*. ¶ 24 (emphasis added).  So, while butter is an ingredient in All Butter Loaf Cake, so are "artificial flavors," which Plaintiff alleges include artificial vanillin.  *Id*. ¶ 25.  And according to Plaintiff, artificial vanillin provides "creamy and fatty sensations when used in foods" and can be used to create a "buttery top note."  *Id*. ¶¶ 27, 30.  Plaintiff believes that Defendant used vanillin "because it cost less and was more potent in providing the creamy and fatty flavor notes butter is known for."  *Id*. ¶ 35.

Plaintiff alleges that, based on its misleading name, she bought All Butter Loaf Cake for the "premium price" of "no less than $3.99 per 11.5 OZ," which is "higher than it would be sold for absent the misleading representations and omissions[.]"  *Id*. ¶ 37.  Based on All Butter Loaf Cake's label, Plaintiff brought the following claims in her individual capacity and on behalf of a putative class of Missourians who have bought All Butter Loaf Cake:

Count I:    Violation of the Missouri Merchandising Practices Act (MMPA)

Count II:   Breaches of Express Warranty, Implied Warranty of Merchantability, and the Magnuson Moss Warranty Act

Count III:  Negligent Misrepresentation

Count IV:  Fraud

Count V:   Unjust Enrichment

Count VI:  Injunctive Relief

Defendants moved to dismiss all Plaintiff's claims for failure to state a claim.  *See* Doc. [6].  After briefing and oral argument, the Court dismissed Counts II, III, and VI, and took the remaining claims under advisement.  *See* Doc. [23].

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a claim for "failure to state a claim upon which relief can be granted."  The notice pleading standard of Federal Rule of Civil Procedure 8(a)(2) requires a plaintiff to give "a short and plain statement of

the claim showing that the pleader is entitled to relief." To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Determining if well-pled factual allegations state a "plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679. A plaintiff's allegations must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Whitney v. Guys, Inc.*, 700 F.3d 1118, 1128 (8th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678). The well-pled facts must establish more than a "mere possibility of misconduct." *Iqbal*, 556 U.S. at 679.

When ruling on a motion to dismiss, a court "must liberally construe a complaint in favor of the plaintiff," *Huggins v. FedEx Ground Package Sys.*, 592 F.3d 853, 862 (8th Cir. 2010), and "grant all reasonable inferences in favor of the nonmoving party," *Lustgraaf v. Behrens*, 619 F.3d 867, 872-73 (8th Cir. 2010) (citing *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 591 (8th Cir. 2009)). But if a claim fails to allege one of the elements necessary to recovery on a legal theory, the Court must dismiss that claim for failure to state a claim upon which relief can be granted. *See Crest Constr. II, Inc. v. Doe*, 660 F.3d 346, 355 (8th Cir. 2011).

**DISCUSSION**

**I.     The Complaint does not state a claim under the MMPA.**

The MMPA prohibits the "act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce." Mo. Rev. Stat. § 407.020.1. "To recover damages under the MMPA, a private plaintiff must allege and prove that she '(1) purchased merchandise from the defendant; (2) for personal, family, or household purposes; and (3) suffered an ascertainable loss of money or property; (4) as a result of an act declared unlawful under the MMPA.'" *Hennessey v. Gap, Inc.*, 86 F.4th 823, 827 (8th Cir. 2023) (cleaned up) (quoting *Goldsmith v. Lee Enter., Inc.*, 57 F.4th 608, 615 (8th Cir. 2023)).

The 2020 amendments to the MMPA "place more stringent requirements on plaintiffs raising MMPA claims." *Abbott v. Golden Grain Co.*, 677 F. Supp. 3d 940, 946 (E.D. Mo. 2023). A plaintiff must establish:

3

>  (a) That the person acted as a reasonable consumer would in light of all circumstances;
>
>  (b) That the method, act, or practice declared unlawful by section 407.020 would cause a reasonable person to enter into the transaction that resulted in damages; and
>
>  (c) Individual damages with sufficiently definitive and objective evidence to allow the loss to be calculated with a reasonable degree of certainty.

Mo. Rev. Stat. § 407.025.1(2). And the MMPA allows a court to "dismiss a claim as a matter of law where the claim fails to show a likelihood that the method, act, or practice alleged to be unlawful would mislead a reasonable consumer." *Id*. § 407.025.1. The 2020 amendments "empower courts to dismiss as a matter of law cases that previously may have made it past the motion-to-dismiss stage." *Abbott*, 677 F. Supp. 3d at 946.

Under the standards set by the amended MMPA, the Complaint fails to state a claim, in that it "fails to show a likelihood" that the product's label "would mislead a reasonable consumer." Mo. Rev. Stat. § 407.025. Plaintiff alleges that the name "All Butter Loaf Cake" misled her to believe that "the Product's butter taste was only from butter and not from artificial flavoring ingredients which provided a butter taste." Doc. [1] ¶ 68. But she fails to show a likelihood that a reasonable consumer would draw that inference.

It is not easy to determine what a reasonable consumer would understand "All Butter Loaf Cake" to mean in the context of the label at issue in this case. At first glance, the name suggests a product made *entirely* of butter, à la state-fair-style butter sculptures. But the packaging—which conspicuously depicts slices of cake and also gives the consumer a peek of the product itself—immediately dispels that impression. Seeing that the product is a cake and that its name is "All Butter Loaf Cake," a reasonable consumer would no doubt expect the cake's ingredients to include butter. But a reasonable consumer would also know that a cake must have ingredients other than butter. And the package says nothing about those ingredients.

In another putative class action over the meaning of "All Butter Loaf Cake," another plaintiff alleged that she interpreted "All Butter Loaf Cake" to mean that "all the shortening and flavoring comes from real butter," and "no butter alternatives or substitutes will be used in the Product where butter is capable of being used." *Elder v. Bimbo Bakeries USA, Inc.*, 2022 WL 816631, at *2 (S.D. Ill. Mar. 17, 2022). But Plaintiff here allegedly read the name "All Butter Loaf Cake" differently. Based on the product's name, she "expected . . . its butter taste was only from butter," and "if the Product used artificial flavoring to make it seem like it had more butter

4

than it did, this fact would be disclosed on the front label." *Id.* ¶¶ 52-53. That belief "attributes an awful lot to an innocuous, two-word phrase." *Song v. Champion Petfoods USA, Inc.*, 2020 WL 7624861, at *5 (D. Minn. Dec. 22, 2020), *aff'd*, 27 F.4th 1339 (8th Cir. 2022). The Court "finds it implausible that a reasonable consumer would interpret the phrase in this manner." *Id.*

Courts have taken different approaches when considering what a reasonable consumer would do with an ambiguous label. Some courts in this district have assumed that when a label is ambiguous, a reasonable consumer would look for more information on the package to resolve the ambiguity. "Reasonable consumers do not meticulously examine every front label 'to parse them as lawyers might for ambiguities.' But reasonable consumers do review product labels and packaging." *Bell v. Annie's, Inc.*, 673 F. Supp. 3d 993, 998 (E.D. Mo. 2023) (citation omitted) (quoting *Bell v. Publix Super Mkts., Inc.*, 982 F.3d 468, 476 (7th Cir. 2020)); *see also Abbott*, 677 F. Supp. 3d at 950 ("In this case, a reasonable consumer would understand that the package promised 6.09 ounces of rice pilaf and no more. How? By reading the package."); *Muller v. Blue Diamond Growers*, 683 F. Supp. 3d 933, 943 (E.D. Mo. 2023) (considering the "ingredients list on the back of the packaging, which include[d] 'natural hickory smoke flavor'").

Applying the "back-label" approach to All Butter Loaf Cake, one presumes that when the reasonable consumer failed to immediately comprehend what "All Butter" meant in relation to a product that obviously contains ingredients other than butter, that consumer would have further examined the product's packaging. The front of All Butter Loaf Cake's package does not make any representations about the provenance of its ingredients, e.g., "all natural" or "no artificial flavors," so if the reasonable consumer wondered whether "All Butter" implied something about the product's ingredients, she would have had to read the ingredient list. There, she would have found both "butter" and "artificial flavors," which would have precluded the reasonable consumer from interpreting "All Butter" the way Plaintiff claims to have interpreted it.

Several circuits have expressed skepticism about the back-label defense. In *Bell v. Publix Super Markets, Inc.*, for example, the Seventh Circuit considered whether products with the label "100% Grated Parmesan Cheese" were misleading because the products were "not 100 percent cheese, but rather contain[ed] between four and nine percent added cellulose powder and potassium sorbate." 982 F.3d at 473. The court found that a reasonable consumer could interpret "100% Grated Parmesan Cheese" to mean that the product was all cheese, nothing else, explaining that "[c]onsumer-protection laws do not impose on average consumers an obligation

5

to question the labels they see and to parse them as lawyers might for ambiguities, especially in the seconds usually spent picking a low-cost product." *Id*. at 476.  And in *Dumont v. Reily Foods Co*., the First Circuit held that it was reasonable for a consumer buying "Hazelnut Crème" coffee to think that the product would contain some hazelnut, despite an ingredient list reading "100% Arabica Coffee Naturally and Artificially Flavored."  934 F.3d 35, 40 (1st Cir. 2019).

Other circuits have drawn a distinction between labels that are ambiguous and misleading and those that are simply ambiguous.  So, for example, the Ninth Circuit has held when "a front label is ambiguous, the ambiguity can be resolved by reference to the back label."  *McGinity v. Procter & Gamble Co.*, 69 F.4th 1093, 1099 (9th Cir. 2023).  But "a front label is not ambiguous simply because it is susceptible to two possible meanings; a front label is ambiguous when reasonable consumers would necessarily require more information before reasonably concluding that the label is making a particular representation."  *Whiteside v. Kimberly Clark Corp.*, 104 F.4th 771, 781 (9th Cir. 2024).  Only then "can the back label be considered at the dismissal stage."  *Id*.  And the Second Circuit has held that "a reasonable consumer should not be expected to consult the Nutrition Facts panel on the side of the box to correct misleading information set forth in large bold type on the front of the box."  *Mantikas v. Kellogg Co.*, 910 F.3d 633, 637 (2d Cir. 2018).  *Id*.  But that does not mean that information on a back label can never be considered at the pleading stage:  "[C]ontextual information on the reverse of [a] product's packaging [cannot] overcome clearly inaccurate factual representations on the front labeling," but the Second Circuit has considered the back label if the front "does not involve an affirmatively inaccurate statement."  *Foster v. Whole Foods Mkt. Grp., Inc.*, 2023 WL 8520270, at *2 (2d Cir. Dec. 8, 2023) (considering the back label of a fish oil product on a motion to dismiss); *see also Venticinque v. Back to Nature Foods Co.*, 2024 WL 3385136, at *2 (2d Cir. July 12, 2024) (declining to look to an ingredient list because "the front of the package is not merely ambiguous, but arguably falsely implies that a prominently-mentioned ingredient . . . predominates"); *Montgomery v. Stanley Black & Decker, Inc.*, 2024 WL 939151, at *2 (2d Cir. Mar. 5, 2024) (affirming dismissal of claim that a vacuum labeled to have "Peak HP" was misleading, because package included a disclaimer and "fine print may clarify an ambiguous label on packaging"); *Baines v. Nature's Bounty (NY), Inc.*, 2023 WL 8538172, at *3 (2d Cir. Dec. 11, 2023) ("To the extent the front label leaves any ambiguity about the contents of Defendants' product, the back label provides sufficient clarification.").

6

The Eighth Circuit has said less about the back-label defense than some of its sister circuits. In *Song v. Champion Petfoods USA, Inc.*, the Eighth Circuit upheld the dismissal of a challenge to dog food that included the labels "BIOLOGICALLY APPROPRIATE" and "FRESH REGIONAL INGREDIENTS." 27 F.4th 1339, 1341 (8th Cir. 2022). The court explained that "none of Champion's packaging statements are deceptive or misleading, and thus none require corrective disclosures." *Id*. at 1346 (quoting *Song*, 2020 WL 7624861, at *11). And although the district court "did not expect consumers to conduct such an examination," the court explained that "[c]onsumers are not expected to examine the fine-print ingredient list located on the back of a label to correct a *prominent front-label misrepresentation*." *Id*. at 1345 n.7 (emphasis added) (citing *Bell*, 982 F.3d at 473-74; *Dumont*, 934 F.3d at 40; *Mantikas*, 910 F.3d at 637). So, while a manufacturer in this circuit may not rely on an ingredient list to avoid liability for a "prominent front-label misrepresentation," the Eighth Circuit has not foreclosed the possibility of looking to the back label to resolve ambiguity absent such a misrepresentation.

"All Butter Loaf Cake" is ambiguous, but it is not misleading. Unlike "100% Grated Parmesan Cheese," which might lead a consumer to expect the product to be all cheese, "All Butter Loaf Cake" does not lead a consumer to expect the product to be all butter, because the photo and the product belie that interpretation. Lacking that possible interpretation of "All Butter," there is not enough information on the label for a consumer to draw any conclusion about what it means. Plaintiff's claim—that a reasonable consumer could conclude from that phrase alone that there are no non-butter sources of flavor—is implausible. The name might just as plausibly imply the absence of non-butter shortening agents or the lack of some other alternative to butter.[2] The phrase "All Butter Loaf Cake" alone does not clearly point to any single interpretation.

The common-sense fact that reasonable consumers do not ordinarily scrutinize product labels cuts both ways. Manufacturers cannot rely on consumers to "parse every front label or read every back label before placing groceries in their carts." *Bell*, 982 F.3d at 476. At the same time, consumers may not "parse [labels] as lawyers might for ambiguities" that might, with some

---

[2] Thus, for example, the plaintiff in a lawsuit similar to this one initially alleged that consumers interpreted "All Butter" to mean that "wherever butter could be used in the Product, it would be used instead of using its synthetic substitutes, vegetable oils." *Elder v. Bimbo Bakeries USA, Inc.*, 2021 WL 11136088, ¶ 6 (S.D. Ill. June 20, 2021) (Class Action Complaint).

7

creative lawyering, be portrayed as misleading. *Id*. Even in finding that the ingredient label did not save the defendants in the "100% Grated Parmesan Cheese" case, the Seventh Circuit noted that "where plaintiffs base deceptive advertising claims on unreasonable or fanciful interpretations of labels or other advertising, dismissal on the pleadings may well be justified." *Id.* at 477. The court cited examples of such unreasonable interpretations, including the claim that a "'Made with Real Vegetables' label on [a] box of crackers could not reasonably mean [the] crackers were 'composed of primarily fresh vegetables,'" and that "colorful 'crunch berries' on Cap'n Crunch box did not reasonably promise fresh fruit." *Id*. at 478 (citing *Red v. Kraft Foods, Inc.*, 2012 WL 5504011, at *3 (C.D. Cal. Oct. 25, 2012); *Werbel v. Pepsico, Inc.*, 2010 WL 2673860, at *5 (N.D. Cal. July 2, 2010)). On the spectrum from the most reasonable interpretations of product labels to the least reasonable, Plaintiff's claims about All Butter Loaf Cake might not quite reach the crunch-berries-mean-fresh-fruit end, but they do fall squarely on the wrong side of the center line.

The cases cited by Plaintiff are distinguishable on both the law—in that they apply the pre-amendment MMPA—and the facts. *See* Doc. [12] at 9-10. In *Murphy v. Stonewall Kitchen, LLC*, the plaintiff alleged that a cupcake mix label was misleading because it said the mix was "all natural," but it contained an artificial ingredient. 503 S.W.3d 308, 310 (Mo. Ct. App. 2016). The court rejected Stonewall Kitchen's argument that its use of "all natural" was not misleading because the ingredient list disclosed the allegedly artificial ingredient. *Id*. at 312-313. "A reasonable consumer would expect that the ingredient list comports with the representations on the packaging." *Id*. at 313. All Butter Loaf Cake's label does not say "all natural," and "All Butter" does not mean the same thing. A reasonable consumer knows that the cake they were looking at contains ingredients other than butter, and the label makes no claims about those ingredients. Plaintiff's other cases are distinguishable for similar reasons. *See Webb v. Dr Pepper Snapple Grp., Inc.*, 2018 WL 1955422, at *1 (W.D. Mo. Apr. 25, 2018) (declining to dismiss MMPA claim that ginger ale label stating "Made from Real Ginger" was misleading because the product contained no "detectable amount of ginger"); *Thornton v. Pinnacle Foods Grp. LLC*, 2016 WL 4073713, at *1, 3 (E.D. Mo. Aug. 1, 2016) (declining to dismiss MMPA claim that a muffin mix labeled as containing "nothing artificial" was misleading because it contained artificial ingredients).

The problem for Plaintiff is that, while she alleges that All Butter Loaf Cake's label would mislead a reasonable consumer, she did not "show a likelihood" that it would do so, as the MMPA requires. Mo. Rev. Stat. § 407.025.1. The Complaint shows some things about consumer behavior. For example, it shows that many consumers avoid artificial flavors. *See* Doc. [1] ¶¶ 4-16. And it shows that vanillin can be used to enhance some of butter's flavor characteristics. *See id*. ¶¶ 25-32. But it relies on unsupported conclusory allegations for the claim that a reasonable consumer would think that "All Butter Loaf Cake" contains no artificial flavors. *See, e.g.*, *id.* ¶¶ 1, 4. It points to nothing on the label or anywhere else suggesting that the product is "all natural" or contains "nothing artificial." *See Murphy*, 503 S.W.3d at 310; *Thornton*, 2016 WL 4073713, at *1, 3. Because Plaintiff's Complaint "fails to show a likelihood" that All Butter Loaf Cake's label "would mislead a reasonable consumer," she has failed to state a claim under the MMPA.[3] Mo. Rev. Stat. § 407.025.

## II.  Plaintiff's fraud and unjust enrichment claims also fail.

Plaintiff's remaining state law claims for fraud and unjust enrichment fail along with her MMPA claim. Plaintiff fails to properly allege that Defendant provided her with a false representation (fraud) or that Defendant retained a benefit through her purchase of the product under inequitable or unjust circumstances (unjust enrichment). Those claims are also dismissed.

Accordingly,

---

[3] Similar lawsuits about All Butter Loaf Cake have suffered similar fates. The plaintiff in *Boswell v. Bimbo Bakeries USA, Inc.* also alleged that the All Butter Loaf Cake's label misleads customers into thinking that the product does not contain artificial flavors. 570 F. Supp. 3d 89 (S.D.N.Y. 2021). The court dismissed the case for failure to state a claim under New York's consumer protection law, which, like the MMPA, requires a plaintiff to "plausibly allege that the deceptive conduct was 'likely to mislead a reasonable consumer acting reasonably under the circumstances.'" *Id*. at 94 (quoting *Mantikas*, 910 F.3d at 636). The court found that "reasonable consumers here would not be 'lulled into a false sense of security' by the bold lettering on the product's package," and "would need additional information to understand the meaning of 'All Butter' and 'would know exactly where to look to investigate—the ingredient list.'" *Id*. at 96 (quoting *In re 100% Grated Parmesan Cheese Mktg. & Sales Pracs. Litig.*, 275 F. Supp. 3d 910, 922 (N.D. Ill. 2017), *rev'd in part sub nom. Bell*, 982 F.3d 468).

In *Bradby v. Bimbo Bakeries USA, Inc.*, the court held that "Plaintiff has not sufficiently alleged facts to show that the 'All Butter' statement on the Product's label is likely to deceive a reasonable consumer into believing that the Product get its butter flavor solely from butter," or that "Defendant added artificial flavors to the Product to simulate the taste of butter." 2024 WL 1604488, at *6-7 (D. Md. Apr. 12, 2024). And in a third case, *Elder v. Bimbo Bakeries USA, Inc.*, the court denied a motion to dismiss, 2022 WL 816631 (S.D. Ill. Mar. 17, 2022), but granted summary judgment to defendant, finding that the plaintiff had failed to provide any evidence to support the allegations in the complaint. 2023 WL 6382354, at *4-*7 (S.D. Ill. Sept. 29, 2023).

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss, Doc. [6], is **GRANTED**.  This case is dismissed without prejudice.

The Court will issue a separate order of dismissal.

Dated this 27th day of September, 2024.

_____
SARAH E. PITLYK
UNITED STATES DISTRICT JUDGE